## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CHRISTOPHER C.L. CUSTER, M.D.       *
                    Plaintiff       *       No. 4:CV-00-1860
                           *       (JUDGE JONES)
v.       *
                           *
PENN STATE GEISINGER HEALTH       *
SYSTEM, GEISINGER MEDICAL       *       ELECTRONICALLY FILED
GROUP – LEWISTOWN, PENN       *
STATE GEISINGER CLINIC,       *
t/d/b/a  PENN STATE GEISINGER       *       JURY TRIAL DEMANDED
HEALTH GROUP – LEWISTOWN       *
                    Defendants       *

## BRIEF IN SUPPORT OF MOTION IN LIMINE OF DEFENDANTS

### I.      FACTS AND PROCEDURAL HISTORY

        This case arises out of the Plaintiff's claim that he has been discriminated against based on his alleged disability in violation of the Americans with Disabilities Act. Specifically, Plaintiff alleges that Defendant terminated his employment based on their perception that he had a continuing disability that affected his ability to perform in his position as an OB/GYN physician as a result of his history of having suffered listeria meningitis. Defendant challenges Plaintiff's allegations on the grounds that the Plaintiff was only seeing two patients a day following his return to practice because patients were electing not to see him, and that he therefore was incapable of sustaining a revenue-producing patient population sufficient to support his continued employment with the Defendants. Defendants further challenge Plaintiff's allegations on the grounds that they took all reasonable steps under the circumstances to facilitate the Plaintiff's return to work following his illness. As such, Defendants aver that they did not

discriminate against the Plaintiff by terminating him, and that there is a legitimate, non-discriminatory reason for their actions.

Trial in this matter is currently set to begin on November 6. Defendants have submitted a Motion in Limine in anticipation thereof. This Brief is filed in support of those matters.

## II.   QUESTIONS PRESENTED

A.   WHETHER DEFENDANTS SHOULD BE PERMITTED TO INTRODUCE ANY AND ALL STATEMENTS MADE BY THE PLAINTIFF IN HIS COUNTER-STATEMENT OF MATERIAL FACTS SUBMITTED IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS BINDING JUDICIAL ADMISSIONS.

Suggested Answer:   YES.

B.   WHETHER PLAINTIFF SHOULD BE PRECLUDED FROM PRESENTING ANY EVIDENCE WHICH CONTRADICTS STATEMENTS MADE IN HIS COUNTER-STATEMENT OF MATERIAL FACTS FILED IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, AS SUCH STATEMENTS CONSTITUTE JUDICIAL ADMISSIONS.

Suggested Answer:   YES.

C.   WHETHER PLAINTIFF SHOULD BE PRECLUDED FROM PRESENTING ANY EVIDENCE AS TO THE ALLEGED PERCEPTIONS HELD BY CO-WORKERS WITH REGARD TO PLAINTIFF'S ALLEGED DISABILITY.

Suggested Answer:   YES.

D.   WHETHER PLAINTIFF SHOULD BR PRECLUDED FROM PRESENTING ANY EVIDENCE THAT HE WAS PERCEIVED AS DISABLED BY PATIENTS.

Suggested Answer:   YES.

E.   WHETHER DEFENDANTS SHOULD BE PERMITTED TO INTRODUCE EVIDENCE REGARDING THE PLAINTIFF'S MALPRACTICE SETTLEMENT WITH THE DEFENDANTS WHEN SAME IS RELEVANT TO THE ISSUE OF MITIGATION OF DAMAGES.

Suggested Answer:   YES.

F.   WHETHER DEFENDANTS SHOULD BE PERMITTED TO INTRODUCE EVIDENCE REGARDING THE PLAINTIFF'S RECEIPT OF DISABILITY BENEFITS FROM A DISABILITY PLAN SPONSORED BY THE DEFENDANTS WHEN SUCH IS RELEVANT TO THE ISSUE OF MITIGATION OF DAMAGES.

Suggested Answer:   YES.

G.   WHETHER PLAINTIFF SHOULD BE PRECLUDED FROM INTRODUCING LOST WAGES AFTER THE DATE ON WHICH HIS CONTRACT FOR EMPLOYMENT WITH GEISINGER EXPIRED.

Suggested Answer:   YES.

## III.   <u>ARGUMENT</u>

A.   THAT, WITHOUT LIMITATION, DEFENDANTS BE PERMITTED TO INTRODUCE ANY AND ALL STATEMENTS MADE BY THE PLAINTIFF IN HIS COUNTER-STATEMENT OF MATERIAL FACTS SUBMITTED IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS BINDING JUDICIAL ADMISSIONS.

On April 15, 2002, Defendants filed a Motion for Summary Judgment and Statement of Material Facts in support thereof. On May 22, 2002, in accordance with Local Rules, Plaintiff filed a Counter-Statement of Material Facts in opposition to Defendants' Motion for Summary Judgment. Defendants contend that Plaintiff's Counter-Statement of Material Facts, which purport to state the facts of the case in the light most favorable to the Plaintiff, constitute judicial admissions which bind the Plaintiff thereto. As such, Defendants contend that: (a) they should be entitled to admit into evidence the statements made by Plaintiff in the Counter-Statement of Material Facts; and (2) that Defendants, because the Plaintiff is or should be precluded from introducing evidence contradicting these statements, are not and should not be required to submit any further evidence on the issues and facts contained in Plaintiff's Counter-Statement of Material Facts.

There are two types of admissions: evidentiary and judicial. Leonard Packel and Anne Poulin, Pennsylvania Evidence, § 805.5 (1987). Evidentiary admissions generally refer to statements made by a party of "certain facts". Sherman v. Franklin Regional Medical Center, 660 A.2d 1370 (Pa. Super. 1995), petition for allowance of appeal denied, 670 A.2d 142 (Pa. 1995) (quoting Durkin v. Equine Clinics, Inc., 546 A.2d 665, 670 (Pa. Super. 1988)). Judicial admissions, by contrast, are formal admissions which effectively withdraw the admitted fact from issue without requiring proof of that fact. Durkin. Judicial admissions are conclusive and binding on the party making them, whereas evidentiary admissions may always be contradicted or explained. Lapayowker v. Lincoln College Preparatory School, 125 A.2d 451 (Pa. 1956), overruled in part by Butler v. Butler, 464 Pa. 522, 347 A.2d 477 (1975); Durkin. Judicial admissions are deemed true and cannot be contradicted by the admitting party. Rizzo v. Haines, 555 A.2d 58, 69 (Pa. 1989) ("When a man alleges a fact in a court of justice, for his advantage, he shall not be allowed to contradict it afterwards. It is against good morals to permit such double dealing in the administration of justice.").  If there is some support in the record for the truth of an averment, the trial court abuses its discretion if it disregards the judicial admission. Rizzo, supra, at 69.  Moreover, judicial admissions are binding on a party where they are made by the party himself or by his attorney.  Glick v. White Motor Company, 458 F.2d 1287, 1291 (3rd Cir. 1972).

Pennsylvania law is well settled that a party is bound by admissions of fact he makes during the course of litigation. Grubbs v. Denibec, 359 A.2d 418 (Pa. Super. 1976). Statements of fact by one party in pleadings, stipulations, testimony, and the like, made for that party's benefit are termed "judicial admissions" and are binding on the party. Nasim Shamrock Welding Supply Company, 563 A.2d 1266, 1267 (Pa. Super. 1989) ("It is well established that a judicial

admission is an express waiver made in court or preparatory to trial by a party or his attorney, conceding for the purposes of trial, the truth of the admission."); see also Topps Apparel Manufacturing Co. v. Rothman, 244 A.2d 436 (Pa. 1968) (admissions in preliminary objections); M. Glosser & Sons, Inc. v. Micco,  309 A.2d 602 (Pa. Cmwlth. 1973) (admissions in affidavit by representative of a party); and Hachick v. Kobelak, 393 A.2d 692 (Pa. Super. 1978) (admissions in verified pleading subsequently amended). It is clear that any admission of fact made by plaintiff in the pleadings, depositions, answers to interrogatories, et cetera, are admissible not only to impeach plaintiff, but as substantive evidence which may not be contradicted. Moreover, such admissions are considered conclusive in the cause of action in which they are made-- and during any appeals thereof --and the opposing party need not offer further evidence to prove the fact admitted. Rizzo, 555 A.2d at 69; Nasim, 563 A.2d at 1267.

For an averment to qualify as a judicial admission, especially where the admission occurs at trial or deposition, it must be a clear and unequivocal admission of fact. Judicial admissions are limited in scope to factual matters otherwise requiring evidentiary proof, and are exclusive of legal theories and conclusions of law. Glick, 458 F.2d at 1291; Durkin, supra,  546 A.2d at 669-70. The fact must have been unequivocally admitted and not be merely one interpretation of the statement that is purported to be a judicial admission. Jones v. Constantino , 631 A.2d 1289, 1293-94 (Pa. Super. 1993) (finding no admission where "the evidence could be reasonably construed to admit of more than one meaning"); see also, Phila. Reinsurance Corp. v. Employers Ins. of Wausau, 61 Fed. Appx. 816 (3d Cir. 2003) ("An unequivocal statement is one that is clear, unambiguous and expresses only one meaning."); Glick, 458 F.2d at 1291. Thus, an admission is not conclusively binding when the statement is indeterminate, inconsistent, or ambiguous. Greater Valley Terminal Corp. v. Goodman, 405 Pa. 605, 176 A.2d 408, 410 (Pa.

1962); <u>Dible v. Vagley</u>, 612 A.2d 493, 499 (Pa. Super. 1992) (finding no admission in a statement in which "pronouns are burdened with ambiguous antecedents, and syntax is opaque" and that "to be an admission, a statement must at least be intelligible [and its] subject matter . . . readily determinable");  <u>Astrazeneca AB v. Mutual Pharm. Co.</u>, 250 F. Supp. 2d 506, 518 (E.D. Pa. 2003). When there is uncertainty surrounding a conceded fact, it is the role of the judge or jury as fact finder to determine which facts have been adequately proved and which must be rejected. See, <u>Oscanyan v. Arms Co.</u>, 103 U.S. 261, 263-4 (1880).

In this case, the Plaintiff has submitted a "Counter-Statement of Undisputed Material Facts" in support of his opposition to the Defendant's Motion for Summary Judgment in this case. As a formal submission to the Court, the averments of fact made in the statement constitute admissions in a "pleading, stipulation, testimony, and the like". As such, they constitute judicial admissions under the above-cited precedent, are binding on the Plaintiff, and no evidence need be presented at trial as to these facts. It is important to note that, in the context of a Motion for Summary Judgment, the facts are to be viewed in the light most favorable to the non-moving party, in this case the Plaintiff. See <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655; <u>Gans v. Mundy</u>, 762 F.2d 338, 341 (3d Cir. 1985). All the averments contained in the Statement of Undisputed Material Facts are the best possible facts for the Plaintiff. The statements are clear and unequivocal, as required in order to constitute a judicial admission.

Because the admissions contained in the Statement of Undisputed Material Facts thus constitute judicial admissions, Defendant contends that it is under no obligation to present any evidence with regard thereto at the trial of this case. Rather, evidence of these issues should be admitted by way of a recitation of these facts to the jury prior to their charge and deliberations. For these reasons, Defendants respectfully request that this Honorable Court grant their Motion

in Limine and permit the introduction of Plaintiff's Counter-Statement of Material Facts into evidence at the underlying trial of this matter.

        B.      THAT, WITHOUT LIMITATION, PLAINTIFF BE PRECLUDED FROM PRESENTING ANY EVIDENCE WHICH CONTRADICTS STATEMENTS MADE IN HIS COUNTER-STATEMENT OF MATERIAL FACTS FILED IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, AS SUCH STATEMENTS CONSTITUTE JUDICIAL ADMISSIONS.

As discussed above, judicial admissions are conclusive and binding on the party making them, whereas evidentiary admissions may always be contradicted or explained. Lapayowker v. Lincoln College Preparatory School, 125 A.2d 451 (Pa. 1956), overruled in part by Butler v. Butler, 464 Pa. 522, 347 A.2d 477 (1975); Durkin. Judicial admissions are deemed true and cannot be contradicted by the admitting party.  Rizzo v. Haines, 555 A.2d 58, 69 (Pa. 1989) ("When a man alleges a fact in a court of justice, for his advantage, he shall not be allowed to contradict it afterwards. It is against good morals to permit such double dealing in the administration of justice.").  If there is some support in the record for the truth of an averment, the trial court abuses its discretion if it disregards the judicial admission.  Rizzo, supra, at 69. Moreover, judicial admissions are binding on a party where they are made by the party himself or by his attorney.  Glick v. White Motor Company, 458 F.2d 1287, 1291 (3rd Cir. 1972).

Because the statements included in Plaintiff's Counter-Statement of Undisputed Material Facts constitute judicial admissions as discussed above, they are binding on the Plaintiff. Under the relevant precedent regarding judicial admissions, Plaintiff is precluded from presenting evidence to contradict any statements contained therein. As such, Defendants therefore respectfully request that this Honorable Court grant its Motion in Limine, and issue an Order precluding the Plaintiff from introducing any evidence to contradict the facts as contained in the

Statement. Defendant respectfully request that this Order precluding the introduction of contradictory evidence be issued irrespective of any Order issued with regard to the reading of the Statement to the Jury as outlined in Paragraph A.

> C.    THAT, WITHOUT LIMITATION, PLAINTIFF BE PRECLUDED FROM PRESENTING ANY EVIDENCE AS TO THE ALLEGED PERCEPTIONS HELD BY CO-WORKERS WITH REGARD TO PLAINTIFF'S ALLEGED DISABILITY.

Plaintiff has alleged, in part, that he was perceived as disabled by the Defendants' and Defendants' employees. Specifically, he suggests that his co-workers, including nurse midwives, nurses, and other non-decision-making employees, perceived him as disabled. Defendants assert that the perceptions and opinions of Plaintiff's co-workers, specifically where they were not involved in the decision to terminate the Plaintiff and had no authority with regard thereto, cannot form the basis for a finding against the corporate Defendants where there is no evidence of any discrimination on the part of the decision-makers.

Individuals who are regarded as disabled are deemed disabled within the meaning of the ADA. See 42 U.S.C. § 12102(2)(C). There are two ways an individual can qualify for protection under this subsection: (1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual non-limiting impairment substantially limits one or more major life activities. See Sutton v. United Airlines, Inc., 527 U.S. 471, 489 (1999); see also Tice v. Centre Area Transportation Authority , 247 F.3d 506, 514 (3d Cir. 2001). The employer must have perceived that the impairment substantially limited the plaintiff in a major life activity and not merely with respect to a particular job. See  Murphy v. United Parcel Service, 527 U.S. 516, 522 (1999); Taylor v. Pathmark Stores, Inc., 177 F.3d 180, 192 (3d Cir. 1999).

Under the ADA, a "covered entity" is precluded from discriminating against a qualified individual with a disability with regard to the terms and conditions of employment. 42 U.S.C. § 12112(a).   A "covered entity" is defined as an "employer, employment agency, labor organization, or joint labor-management committee." 42 U.S.C. §12111(2). "The term "employer" means a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year, and any agent of such person, except that, for two years following the effective date of this title, an employer means a person engaged in an industry affecting commerce who has 25 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding year, and any agent of such person." 42 U.S.C. §12111(5)(A). Under these definitions, there must be affirmative action on the part of the employer, acting through its officers, managers, and supervisors, in order for the company to be held liable for discrimination.

Although there is no case in the Third Circuit which discusses the issue of whether or not a co-worker's perceptions in and of itself is sufficient to support liability against the employer where an adverse employment action occurs, a number of other courts have so held. For instance, in Qualls v. Lack's Stores, Inc., 1999 U.S. Dist. LEXIS 5731 (N.D. Tx. March 31, 1999), the Court granted summary judgment in favor of the employer on the Plaintiff's regarded-as claim. Plaintiff was employed as a sales associate at the employer's store, and had been diagnosed with Hepatitis C during the course of his employment with the Defendant. Plaintiff alleged that one of his co-workers, who was also a sales associate and who therefore had no management or supervisory authority over any employee at the store, and in particular who had no supervisory authority over the Plaintiff, complained about the Plaintiff's work and the possibility that the

Plaintiff could infect co-workers and patrons through casual contact. Plaintiff contended that, when he was subsequently terminated allegedly for "insubordination", the Defendant was in fact discriminating against him on the basis of his medical condition. The Court stated that proof of co-employees' comments and beliefs were insufficient to show that a decision-maker at Lack's regarded the Plaintiff as being impaired and terminated him on that perception. The absence of participation or misperception on the decision-making authorities precluded liability under the ADA.

Similarly, in Lanman v. Johnson County, Kansas, 2003 U.S. Dist. LEXIS 25301 (D. Kan. September 23, 2003), the Court granted summary judgment in favor of the employer where Plaintiff's allegations were that her co-deputies ridiculed her and accused her of being mentally ill. The Plaintiff had apparently never been treated for or diagnosed with a mental illness; she claimed merely on the basis of these comments that the employer regarded her as disabled and that she was constructively discharged due to their belief. The Court granted summary judgment in favor of the employer, stating: "plaintiff provides no legal authority to explain why the comments of fellow deputies show that defendant, her employer, considered her disabled…Deputies in the sheriff's department are not decisionmakers, so their alleged mean-spirited comments do not prove that defendant regarded plaintiff as disabled within the ADA." Clearly, in the absence of comments or actions on the part of the decision-makers in a company which are based on their beliefs as to an employee's medical condition, there can be no liability on the corporate defendant under the Lanman case.

The Court in Lanman relied on the Tenth Circuit's opinion in Rakity v. Dillon Companies, Inc., 302 F.3d 1152 (2002), for their position that there was no legal basis on which to hold the employer liable for the comments of an employee's co-workers. In Rakity, the

Plaintiff alleged that his employer regarded him as disabled in the major life activity of heavy lifting and/or performing manual tasks. He alleges that he was denied a promotion due to this mistaken belief. In support of his position, the Plaintiff asserted that one of his managers, who was not his supervisor at the time of the requested promotion, testified at his deposition that he was under the belief that Rakity's doctor-imposed lifting restrictions meant that he could not perform any lifting tasks. The Court, in granting summary judgment to the employer, noted that the former manager was not the decision-maker with regard to the requested promotion. The Court stated: "When reviewing a plaintiff's claim that he was discriminated against because he was "regarded as" having an impairment, the court must focus "on how the plaintiff was perceived and treated by those individuals alleged to have taken discriminatory action." Deas v. River West, L.P., 152 F.3d 471, 476 n. 9 (5th Cir. 1998)…" Because the Plaintiff could cite no legal authority and failed to make any factual argument regarding how the views of a non-decision-maker could prove that his employer regarded him as disabled, he could not satisfy the prima facie case.

The District of Kansas, in McKinzie v. Sprint/United Management Co., 2004 U.S. Dist. LEXIS 23417 (D. Kan. November 16, 2004), again reiterated their position on the issue of co-worker perceptions. In that case, the Plaintiff was an Employee Relations Coordinator who worked closely with Employee Relations Specialists. The two positions were equal, and neither held supervisory authority over the other. The Plaintiff alleged that one ER Specialist sent an email to the Plaintiff's supervisor, accusing the Plaintiff of not being able to handle her work and being unable to do her job. The Plaintiff alleged that this email complaint, and similar comments by the same employee, constituted evidence of discrimination on the basis of her depression and

panic disorder. Citing to <u>Lanman</u> and <u>Rakity</u>, the Court held that the statements of the non-decision-maker employee were insufficient to hold the employer liable under the ADA.

The fact that decision-makers or company officials did not make comments upon which a plaintiff bases his claims of disability discrimination can be fatal to a claim under the ADA, as discussed above. In addition, however, an unsupported allegation that officials knew about the health rumors going around the company with regard to the plaintiff may also be insufficient. In <u>Roberts v. Unidynamics Corp.</u>, 126 F.3d 1088 (8th Cir. 1997), the Plaintiff alleged that a co-worker advised another co-worker not to use the Plaintiff's respirator because the Plaintiff might have AIDS, and that this comment, along with others regarding the Plaintiff's perceived condition, was evidence of discrimination under the ADA. The court granted summary judgment for the employer, finding that the Plaintiff had failed to link the rumors to the company's management and/or decision makers because none were made by officials. Moreover, he failed to present any evidence that they were in fact aware of the rumors. The Court therefore held that the plaintiff had failed to make out a prima facie case.

Although there are a number of courts which have found that co-worker perceptions support a finding of liability against the corporate defendant, Defendants submit that the language of the ADA with regard to a "covered entity" and "employer" clearly indicate that liability can only be had where the decision-maker held the impermissible perception. The case law cited above clearly supports this proposition, and to the extent that any case law to the contrary appears to be in opposition to the clear language of the ADA, Defendants submit that this Honorable Court should adopt the findings set forth above with regard to the effect of co-worker perceptions. Furthermore, on the basis of this perception, Defendants respectfully request that, because co-worker perception cannot support liability against the corporate Defendants, that

Plaintiff be precluded from introducing any evidence with regard thereto as irrelevant and prejudicial under Fed. R. Evid. 401-403.

D.     THAT, WITHOUT LIMITATION, PLAINTIFF BE PRECLUDED FROM PRESENTING ANY EVIDENCE THAT HE WAS PERCEIVED AS DISABLED BY PATIENTS.

As discussed above, liability can only attach to the corporate Defendant where the decision-makers themselves perceived a Plaintiff to be disabled and took adverse employment action as a result of that perception in violation of the ADA. A co-employee's perceptions as to the Plaintiff's disability is insufficient to establish liability on the part of the Defendant-employer if the decision-makers did not hold those same perceptions of disability. As a result, Defendants argued above that evidence relating to these perceptions should not be permitted at trial.

In addition to his argument that his co-workers perceived him as disabled, the Plaintiff will argue that Defendants' patients also perceived him to be disabled following his return to work after his illness. However, again, the Defendants' patients are not the relevant decision-makers with regard to his ultimate termination from employment with the Defendants. Their perceptions cannot be considered the perceptions of the decision-making authority or the corporate Defendants, and therefore any perceptions held by the patients are irrelevant to the underlying claim. Introduction of these alleged perceptions would be highly prejudicial to the Defendants, and as such under Fed. R. Evid. 401-403, Plaintiff should be precluded from introducing evidence with regard thereto. For the foregoing reasons, Defendants respectfully request that this Honorable Court grant their Motion in Limine and preclude the introduction of any evidence relating to perceptions of disability held by patients.

E.   THAT DEFENDANTS BE PERMITTED TO INTRODUCE EVIDENCE REGARDING THE PLAINTIFF'S MALPRACTICE SETTLEMENT WITH THE DEFENDANTS WHEN SAME IS RELEVANT TO THE ISSUE OF MITIGATION OF DAMAGES.

Plaintiff has alleged in this matter that Geisinger discriminated against him on the basis of an alleged disability under the Americans with Disabilities Act in failing to reasonably accommodate said disability. Specifically, the Plaintiff alleges that Geisinger failed to appropriately advise his fellow doctors, nurses, staff, and patients that he was fully capable of performing his job as an OB/GYN physician, and in failing to provide him with a full patient load, which he had prior to the alleged disability. As a result of Geisinger's actions, the Plaintiff alleges that he suffered a loss of wages during his employment with Geisinger following an injury caused by the malpractice of one of his treating physicians. He further claims that he has suffered a continued loss of wages due to his inability to find a new position as an OB/GYN physician.

As indicated, the Plaintiff's alleged disability arises out of an injury suffered due to the alleged negligence of one of his treating physicians. As a result of this injury, the Plaintiff initiated a medical malpractice action against Geisinger, one of the Defendants in this case, as the employer of the physician in question. Ultimately, the Plaintiff settled his medical malpractice claim with Geisinger for $2.2 million dollars, and returned to work. It was after this return to work that the allegedly discriminatory actions on the part of Geisinger took place.

At trial on this case, Defendants will seek to introduce evidence relating to the Plaintiff's settlement with Geisinger. The evidence of the settlement is directly relevant to the Plaintiff's claimed damages in this case, and should therefore be properly admitted by this Honorable Court. The Plaintiff has contended that he suffered a loss of income following his return to work

at Geisinger after his injury due to the discriminatory actions of Geisinger in failing to provide him with a full patient load. However, Defendants contend that the Plaintiff, because of the settlement monies received, contributed to the decline in his work and case load. Specifically, he had no incentive to seek out patients himself, and relied solely on the Defendants' efforts to schedule appointments, because any reduction in his work load would be offset by the settlement funds which he had already received. Because the Plaintiff's actions in this regard contributed to his low salaries following his return to work, the evidence of the settlement, which provides the motivation (or lack thereof) on the part of the Plaintiff is directly relevant to the issue of causation of damages in this case. As such, Defendants should be permitted to introduce evidence relating to the basis for the settlement, the fact of the settlement, and the amount thereof as it relates to this issue.

Similarly, as noted above, the Plaintiff has not, since his termination from Geisinger, obtained new employment in his chosen profession. Plaintiff will likely testify that his inability to obtain a new job is directly related to the Defendants' discriminatory action. However, Defendants contend that, given the large settlement he received in the medical malpractice action, the Plaintiff has little incentive to make any effort to obtain a new position in his chosen field because his unemployment does not leave him unable to care for himself or his family. In fact, as will also be discussed at trial, since his termination he has been conducting a home delivery business which has resulted in a substantial loss of money to the Plaintiff, rather than providing him with income by way of profits therefrom. Because of the settlement funds which the Plaintiff received from Geisinger, the Plaintiff has the means to conduct a business which operates in the red but which still allows him to provide for his family. The settlement monies received allow him to make a choice to operate a business at a loss rather than obtain

employment comparable to that which he had with Geisinger, which choice may properly be found by the jury to be the cause of his claimed wage loss. The evidence of the settlement is therefore relevant to the efforts which Plaintiff has made to mitigate his damages, as well as the cause for any lost back wages or future lost earning capacity.  As such, Defendants contend that the evidence of the settlement is relevant evidence as to the Plaintiff's efforts to mitigate his damages, specifically his wage loss, in this case, and should therefore be admitted.

Although not binding on this Honorable Court, other Districts have found this argument persuasive. For instance, in Ensing v. Vulcraft Sales Corp., 830 F. Supp. 1017, 1018 (W.D. MI. 1993), the Defendant sought to introduce evidence of a settlement agreement between the Plaintiff and third parties arising out of a workers' compensation injury. Plaintiff had brought suit against the Defendant-employer alleging that he had been wrongfully discharged following this injury due to the disability resulting therefrom. Defendant argued that the settlement agreement should be admitted into evidence because it reflected on the Plaintiff's motivation to work diligently in a job in which compensation is partly based on commission. Id. Specifically, it is relevant to show, in part, why the Plaintiff's work performance declined and why the Plaintiff failed to mitigate his damages. Id. Finally, Defendant also argued that the settlement agreement should be admitted to show that the Plaintiff had already been compensated for the pain and suffering he sustained as a result of the injury. Id. In examining the issues, the Ensing Court referred to the Michigan rules of evidence, which permitted the use of compromise and offers to compromise where it was offered for a purpose other than to prove liability for or invalidity of the claim or its amount, although the evidence would still be excluded if it was introduced for the purpose of proving liability or invalidity. Id. The Court found that because the evidence was not

being introduced for the purpose of proving liability or invalidity of the claim, it could be admitted under the Michigan Rules of Evidence. Id. at 1018-1019.

Although the Court in Ensing relied primarily on the language contained in the Rules of Evidence regarding compromises and offers to compromise, the reasoning utilized by the Court is directly applicable to this case; the Court found the fact of the settlement relevant to the issue of the Plaintiff's efforts to mitigate his damages, just as the Defendants contend the Plaintiff's medical malpractice settlement is relevant in this case. For these reasons, Defendants assert that the evidence relating to the Plaintiff's settlement of his medical malpractice claim are directly relevant in this case, and should properly be admitted. Defendants therefore respectfully request that this Honorable Court grant their Motion in Limine.

In contrast to the Ensing case, however, the settlement payments in this case are also relevant and admissible on the issue of the claimed lost wages in this case. As noted above, the settlement award in issue came from a settlement between the Plaintiff and Geisinger, the Defendants in this case, in a medical malpractice action. As part of that action, the Plaintiff made a claim for future lost wages and a loss of earning capacity into the future. In this case, the Plaintiff is similarly claiming a loss of wages, both past and future, as a result of the alleged discrimination of Geisinger. To the extent that the Plaintiff's current and future lost wages are or may be caused by the initial medical malpractice and not the alleged discriminatory actions of the Defendants, and the Plaintiff was compensated for those losses by way of the prior medical malpractice settlement award, evidence relating to that settlement is relevant to the claimed damages in this case. As such, the claims made in the prior action, the fact of the settlement, and the amount of the settlement, are relevant to the jury's determination in this case and should be admitted for the jury's consideration at trial.

Plaintiff may argue that evidence relating to the settlement payment cannot be admitted pursuant to the collateral source rule, which is the rule on which the <u>Ensing</u> case relied to prohibit use of the settlement evidence for purposes of reducing the amount of any damage award. However, the collateral source rule does not operate to bar the admission of this evidence in the underlying case. The collateral source rule provides that payments from a collateral source shall not diminish the damages otherwise recoverable from the wrongdoer. <u>Nigra v. Walsh</u>, 797 A.2d 353 (Pa. Super. 2002). Thus, a defendant is not entitled to mitigation of damages because of payments received by an injured person from an independent, or collateral, source. <u>Akins v. City of Philadelphia,</u> 4 Phila. 189 (Phila. Cty. Rptr. 1980).  This rule was intended to avoid precluding a claimant from obtaining redress for his or her injury merely because coverage for the injury was provided by some collateral source, e.g. insurance. <u>Beechwoods Flying Service, Inc. v. Al Hamilton Contracting Corp.,</u> 504 Pa. 618, 476 A.2d 350 (1984). "The collateral source rule may be described as the judicial refusal to credit to the benefit of the wrongdoer money or services received in reparation of the injury caused which emanate from sources other than the wrongdoer." <u>Feeley v. United States</u>, 337 F.2d 924, 926 (3d Cir. 1964). The principle behind the collateral source rule is that it is better for the wronged plaintiff to receive a potential windfall than for a tortfeasor to be relieved of responsibility for the wrong. <u>Moorehead v. Crozer Chester Medical Center</u>, 564 Pa. 156, 765 A.2d 786 (2001).

The Collateral Source rule is predicated upon the theory that a defendant, here Geisinger, has no interest in, and therefore no right to benefit from, monies received by the injured person from sources unconnected with the defendant.  The doctrine, however, does permit the defendant to obtain the advantage of payments <u>made by himself or from a fund created by him</u> because in

such an instance the payments come not from a collateral source, but from the defendant himself.

The Restatement of Torts (2nd), § 920, provides the following:

> Effect of payments made to injured party
> (1)     A payment made by a tortfeasor or by a person acting for him to a person whom he has injured is credited against his tort liability, as are payments made by another who is, or believes he is, subject to the same tort liability.
> (2)     Payments made to or benefits conferred on the injured party from other sources are not credited against the tortfeasor's liability, although they cover all or part of the harm for which the tortfeasor is liable…
> Comment (b):  Benefits from Collateral Sources.  Payments made or benefits conferred by other sources are known as collateral source benefits.  They do not have the effect of reducing the recovery against the defendant. . . .  It is the position of the law that a benefit that is directed to the injured party should not be shifted so as to become a windfall for the tortfeasor.  If the plaintiff has himself responsible for the benefit, as by maintaining his own insurance or by making advantageous employment arrangements, the law allows him to keep it for himself.  If the benefit was a gift to the plaintiff for a third party or established for him by law, he should not be deprived from the advantage that it confers.  The law does not differentiate between the nature of the benefits, so long as they did not come from the defendant or a person acting for him.

It is thus clear from the Restatement, and from Pennsylvania law discussing the issue, that payments made by the defendant may be deducted from any subsequent award involving the same loss, although generally payments made by someone other than the defendant cannot be used to reduce a subsequent award.

In this case, the Plaintiff is claiming both back pay and future lost wages, which he contends is causally related to the alleged discriminatory actions of the Defendants. Specifically, the Plaintiff alleges that the Defendants discriminated against him on the basis of his disability, which was caused by the negligence of several doctors within the Geisinger Health System. Prior to this action against the Defendants for discrimination, the Plaintiff had instituted an action against Geisinger for medical malpractice; as a result of that action, the Plaintiff received $2.2 million dollars in settlement for this claim from Geisinger. The monies came from Geisinger by

way of their malpractice insurance carrier. As an entity acting on behalf of Geisinger, the payments by the insurer are treated under the collateral source rule as if they came directly from Geisinger. Because the payments are made by Geisinger, they do not constitute payments from a collateral source, and cannot be barred from introduction on that basis.

As such, because the settlement evidence is relevant to the Plaintiff's incentives to mitigate his damages as they relate directly to the discrimination claim, relevant to the issue of causation as to the Plaintiff's claimed damages, and because there is a question as to whether or not the Plaintiff has been fully compensated for any lost wages, it should properly be admitted into evidence in this case. Defendants therefore respectfully request that their Motion in Limine be granted.

> F. THAT DEFENDANTS BE PERMITTED TO INTRODUCE EVIDENCE REGARDING THE PLAINTIFF'S RECEIPT OF DISABILITY BENEFITS FROM A DISABILITY PLAN SPONSORED BY THE DEFENDANTS WHEN SUCH IS RELEVANT TO THE ISSUE OF MITIGATION OF DAMAGES.

As discussed above, any "disability" from which the Plaintiff suffers is a result of an illness that was mis-diagnosed by Geisinger physician.  Following his illness, the Plaintiff applied for, and received, total disability benefits in the amount of approximately $140,000 per year. Pursuant to the disability insurance policy applicable to the Plaintiff's injury, he was entitled to the full amount of these benefits, provided that he was not able to, and did not, earn more than $40,000 per year. The policy from which the Plaintiff received total disability benefits was offered to him by the Defendant, Geisinger, and was fully funded thereby. The Plaintiff was not required to, nor did he, make any payments of the premiums in order to obtain this benefit.

Defendants, at the trial of this case, will seek to introduce evidence relating to the disability benefits which Plaintiff received as a result of his underlying injury. Specifically,

Defendants will introduce the benefits as evidence of the cause of the Plaintiff's lost wages, both during his employment at Geisinger and following his termination. The Plaintiff has contended that he suffered a loss of income following his return to work at Geisinger after his injury due to the discriminatory actions of Geisinger in failing to provide him with a full patient load. However, Defendants contend that the Plaintiff, because of the disability benefits he received, contributed to the decline in his work and case load. Specifically, he had no incentive to seek out patients himself, and relied solely on the Defendants' efforts to schedule appointments, because any reduction in his work load would be offset by the disability benefits which he was receiving. Moreover, he had no incentive to seek out additional patients because any increase in his salary over the $40,000 "salary cap" under the disability insurance would result in at least a partial loss of disability benefits, which he received without having to work. Because the Plaintiff's actions in this regard contributed to his low salaries following his return to work, the evidence of the disability benefits, which provides the motivation (or lack thereof) on the part of the Plaintiff is directly relevant to the issue of causation of damages in this case. As such, Defendants should be permitted to introduce evidence relating to the disability benefits in question.

Similarly, as noted above, the Plaintiff has not, since his termination from Geisinger, obtained new employment in his chosen profession. Plaintiff will likely testify that his inability to obtain a new job is directly related to the Defendants' discriminatory actions. However, Defendants contend that, given the disability benefits he was receiving provided that he not make more than $40,000 per year, the Plaintiff has little incentive to make every effort to obtain a new position in his chosen field because his unemployment does not leave him unable to care for himself or his family. In fact, as will also be discussed at trial, since his termination he has been conducting a home delivery business which has resulted in a substantial loss of money to the

Plaintiff, rather than providing him with income by way of profits therefrom. Because of the disability benefits which the Plaintiff receives from Geisinger, the Plaintiff has the means to conduct a business which operates in the red but which still allows him to provide for his family. The disability benefits received allow him to make a choice to operate a business at a loss rather than obtain employment comparable to that which he had with Geisinger, which choice may properly be found by the jury to be the cause of his claimed wage loss. The evidence of the disability benefits is therefore relevant to the efforts which Plaintiff has made to mitigate his damages, as well as the cause for any lost back wages or future lost earning capacity. As such, Defendant contends that the evidence of the disability benefits is relevant evidence as to the Plaintiff's efforts to mitigate his damages, specifically his wage loss, in this case, and should therefore be admitted.

Plaintiff may argue that evidence relating to the disability benefits cannot be admitted pursuant to the collateral source rule. However, the collateral source rule does not operate to bar the admission of this evidence in the underlying case. As discussed above, the collateral source rule provides that payments from a collateral source shall not diminish the damages otherwise recoverable from the wrongdoer. Nigra v. Walsh, 797 A.2d 353 (Pa. Super. 2002). Thus, a defendant is not entitled to mitigation of damages because of payments received by an injured person from an independent, or collateral, source. Akins v. City of Philadelphia, 4 Phila. 189 (Phila. Cty. Rptr. 1980).

The Collateral Source rule is predicated upon the theory that a defendant, here Geisinger, has no interest in, and therefore no right to benefit from, monies received by the injured person from sources unconnected with the defendant. The doctrine, however, does permit the defendant to obtain the advantage of payments made by himself or from a fund created by him because in

such an instance the payments come not from a collateral source, but from the defendant himself.

The Restatement of Torts (2nd), § 920, provides the following:

> Effect of payments made to injured party
>
> (1)    A payment made by a tortfeasor or by a person acting for him to a person whom he has injured is credited against his tort liability, as are payments made by another who is, or believes he is, subject to the same tort liability.
>
> (2)    Payments made to or benefits conferred on the injured party from other sources are not credited against the tortfeasor's liability, although they cover all or part of the harm for which the tortfeasor is liable…
>
> Comment (b):   Benefits from Collateral Sources.   Payments made or benefits conferred by other sources are known as collateral source benefits.   They do not have the effect of reducing the recovery against the defendant. . . . It is the position of the law that a benefit that is directed to the injured party should not be shifted so as to become a windfall for the tortfeasor.   If the plaintiff has himself responsible for the benefit, as by maintaining his own insurance or by making advantageous employment arrangements, the law allows him to keep it for himself.   If the benefit was a gift to the plaintiff for a third party or established for him by law, he should not be deprived from the advantage that it confers.   The law does not differentiate between the nature of the benefits, so long as they did not come from the defendant or a person acting for him.

It is thus clear from the Restatement, and from Pennsylvania law discussing the issue, that payments made by the defendant may be deducted from any subsequent award involving the same loss, although generally payments made by someone other than the defendant cannot be used to reduce a subsequent award.

In this case, the Plaintiff is claiming both back pay and future lost wages, which he contends is causally related to the alleged discriminatory actions of the Defendant. Specifically, the Plaintiff alleges that the Defendants discriminated against him on the basis of his disability, which was caused by the negligence of several doctors within the Geisinger Health System. As a result of this underlying injury, the Plaintiff now receives total disability benefits. The monies paid to the Plaintiff for his disability come from Geisinger by way of their disability insurance

carrier. As an entity acting on behalf of Geisinger, the payments by the insurer are treated under the collateral source rule as if they came directly from Geisinger. Because the payments are made by Geisinger, they do not constitute payments from a collateral source, and cannot be barred from introduction on that basis.

As such, because the evidence of the disability benefits to which the Plaintiff is entitled is relevant to the Plaintiff's incentives to mitigate his damages as they relate directly to the discrimination claim, relevant to the issue of causation as to the Plaintiff's claimed damages, and because there is a question as to whether or not the Plaintiff has been fully compensated for any lost wages, it should properly be admitted into evidence in this case. Defendants therefore respectfully request that their Motion in Limine be granted.

G.    THAT, WITHOUT LIMITATION, PLAINTIFF BE PRECLUDED FROM INTRODUCING LOST WAGES AFTER THE DATE ON WHICH HIS CONTRACT FOR EMPLOYMENT WITH GEISINGER EXPIRED.

An award of back pay is one of the remedies specifically sanctioned by Congress for violations of the ADA, which incorporates the remedial provisions of Title VII. Although not mandatory, back pay is generally awarded to a prevailing Plaintiff absent a compelling reason to deny it, in accordance with the Act's objective of placing a plaintiff in the same position he or she would have enjoyed in the absence of the unlawful discrimination. See Taylor v. Central Pennsylvania Drug and Alcohol Servs. Corp., 890 F. Supp. 360, 368 (M.D. Pa. 1995), citing Albermarle Paper Co. v. Moody, 422 U.S. 405 (1975); Christopher v. Stouder Memorial Hosp., 936 F.2d 870, 880 (6th Cir. 1991); Wooldridge v. Marlene Industries, Inc., 875 F.2d 540, 549 (6th Cir. 1989). However, it is well-settled in Pennsylvania that if the Plaintiff alleging discrimination would have lost his job for permissible reasons sometime after his discharge, back

pay is limited accordingly. See <u>Clarke v. Whitney</u>, 975 F. Supp. 754, 758 (E.D. Pa. 1997); <u>Taylor v. Central Pennsylvania Drug and Alcohol Servs. Corp.</u>, 890 F. Supp. 360, 371 (M.D. Pa. 1995); <u>Bhaya v. Westinghouse Electric Corp.</u>, 709 F. Supp. 600, 605 (E.D. Pa. 1989), aff'd 922 F.2d 184 (3d Cir. 1990); <u>Helbling v. Unclaimed Salvage & Freight Co.</u>, 489 F. Supp. 956, 963 (E.D. Pa. 1980).

In <u>Bhaya</u>, the Court held that evidence that layoffs took place subsequent to the Plaintiff's separation from work which would have resulted in the Plaintiff's loss of employment was relevant an admissible with regard to the issue of the Plaintiff's entitlement to back pay. Specifically, the Court held that if the Plaintiff would have been laid off after their unlawful separation from employment, their damages would be limited accordingly. In support of this holding, the Court cited <u>Helbling v. Unclaimed Salvage & Freight Co.</u>, 489 F. Supp. 956, 963 (E.D. Pa. 1980), in which the Eastern District cut off back pay at the time when the store in which the Plaintiff worked closed. The Court also cited <u>Welch v. University of Texas</u>, 659 F.2d 531, 535 (5th Cir. 1981), in which the 5th Circuit cut off back pay as of the time when the grant which funded the Plaintiff's project would have ended.

In this case, the Plaintiff claims that he was unlawfully terminated in January of 1999 on the basis of an alleged disability in violation of the Americans with Disabilities Act. As part of his remedies for this allegedly unlawful termination, the Plaintiff is making a claim for back pay dating from the time of his termination up to the present day.

However, Defendants assert that any award of back pay to which Plaintiff is or may be entitled should be limited by the terms of his employment contract with Defendants. Specifically, Plaintiff was employed as an OB/GYN physician pursuant to an employment contract which ran from February 5, 1998 through February 4, 1999. Plaintiff's employment, under the terms of the

contract, would have lawfully ended as of February 4, notwithstanding the fact that he had been previously terminated for reasons which Plaintiff asserts were discriminatory in nature. Because the Plaintiff would have been lawfully separated from his employment with Geisinger as of February 4, 1999, his damages for lost wages should be limited to that period between the unlawful and lawful termination.

For this reason, Defendants Penn State Geisinger Health System, Geisinger Medical Group – Lewistown, Penn State Geisinger Clinic, t/d/b/a Penn State Geisinger Health Group - Lewistown respectfully assert that Plaintiff should be precluded from introducing any evidence as to lost wages after February 4, 1999, as any such damages would be irrelevant and prejudicial under the above-cited precedent.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully that this Honorable Court GRANT their Motion in Limine and enter an Order with regard thereto.

Respectfully submitted,

**THOMAS, THOMAS & HAFER, LLP**

**s/Paul J. Dellasega**

Dated:  September 26, 2005          By:

Paul J. Dellasega, Esquire
Crystal H. Williamson, Esquire
305 North Front Street
Sixth Floor, P.O. Box 999
Harrisburg, PA  17108
(717) 255-7602

Attorneys for Penn State Geisinger Health System, Geisinger Medical Group – Lewistown, Penn State Geisinger Clinic, t/d/b/a Penn State Geisinger Health Group - Lewistown

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CHRISTOPHER C.L. CUSTER, M.D. | * | |
| Plaintiff | * | No. 4:CV-00-1860 |
| | * | (JUDGE JONES) |
| v. | * | |
| | * | |
| PENN STATE GEISINGER HEALTH | * | |
| SYSTEM, GEISINGER MEDICAL | * | ELECTRONICALLY FILED |
| GROUP – LEWISTOWN, PENN | * | |
| STATE GEISINGER CLINIC, | * | |
| t/d/b/a  PENN STATE GEISINGER | * | JURY TRIAL DEMANDED |
| HEALTH GROUP – LEWISTOWN | * | |
| Defendants | * | |

**CERTIFICATE OF SERVICE**

      I, Paul J. Dellasega, swear, and HEREBY CERTIFY that I served a copy of the within document on the 26th day of September, 2005, by electronic filing as follows:

Charles F. Wasilefski, Esquire
PETERS & WASILEFSKI
2931 North Front Street
Harrisburg, PA  17110

                **s/Paul J. Dellasega**
                _____
                Paul J. Dellasega, Esquire